UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY DOUGLAS LEWIS,

        Petitioner,                       Case No. 5:18-cv-12542

                                     Stephanie Dawkins Davis
CONNIE HORTON,                 United States District Judge

        Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR
WRIT OF HABEAS CORPUS, (2) GRANTING PARTIAL
CERTIFICATE OF APPEALABILITY, AND (3) GRANTING
PERMISSION TO APPEAL *IN FORMA PAUPERIS***

Ricky Douglas Lewis, a prisoner in the custody of the Michigan Department

of Corrections, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  The petition challenges Petitioner's Wayne Circuit Court jury trial

conviction on two counts of armed robbery, Mich. Comp. Laws § 750.529,

carjacking, Mich. Comp. Laws § 750.529a, unlawfully driving away an

automobile, Mich. Comp. Laws § 750.413, assault with intent to do great bodily

harm less than murder, Mich. Comp. Laws § 750.84, felonious assault, Mich.

Comp. Laws § 750.82, and possession of a firearm during the commission of a

felony, Mich. Comp. Laws § 750.227b.

Petitioner was sentenced to a string of concurrent terms, the longest of which

are his 13-to-30 year sentences for his armed robbery and carjacking convictions,

which he is serving consecutively to his 2 year sentence for his felony-firearm
conviction.

The petition raises five claims: (1) Petitioner's trial counsel was ineffective
for failing to raise an alibi defense, (2) Petitioner was denied due process as the
result of a suggestive in-court identification procedure, (3) Petitioner was denied
due process as a result of suggestive pretrial line up, (4) Counsel was ineffective
for failing to challenge the identification procedures, and (5) Petitioner was denied
the effective assistance of appellate counsel for the failure to better support his
identification claims on direct appeal.

The Court finds that none of Petitioner's claims merit relief. The petition
will therefore be denied. The Court will, however, grant Petitioner a certificate of
appealability on his failure to present an alibi defense claim, and it will grant
permission to appeal *in forma pauperis*.

## I.   BACKGROUND

This Court recites the relevant facts relied upon by the Michigan Court of
Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C.
§ 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's convictions arise from a carjacking
> and robbery that occurred between 12:30 a.m. and 12:45
> a.m. on August 21, 2013. Lori Watson and Jack Gibson
> were talking in Watson's 2007 Saturn, which was parked
> in the driveway of Gibson's condominium near
> downtown Detroit. The driveways and garages in the

2

condominium complex are located at the back of the housing units.  Three men approached the vehicle.  One of the men, whom Watson and Gibson both identified as defendant, went to the driver's side, opened the door, grabbed Watson by her shirt, put a gun to her head, and ordered her out of the car.  When Watson tried to pull away from the man, he struck her in the head with the gun.  The other two men approached the passenger-side door and pulled Gibson out of the car.  The three men then drove away in the vehicle.  Two months later, Watson viewed two live corporeal lineups, with five individuals in each lineup.  She did not identify anyone in the first lineup, but in the second lineup she identified defendant as the man who held the gun to her head and pulled her out of the car.  Gibson did not attend a lineup, but he identified defendant in court at the preliminary examination.  The defense theory at trial was that Watson's and Gibson's identification of defendant was not reliable.

Following his jury trial and conviction, defendant filed a timely claim of appeal with this Court and a motion to remand for a *Ginther* hearing limited to the issue of whether trial counsel was ineffective for failing to present an alibi defense. Based on evidence presented at the hearing, the trial court found that defense counsel reasonably declined to present an alibi defense as a matter of strategy so that he could focus instead on challenging the victims' identification of defendant as a perpetrator of the carjacking.

*People v. Lewis*, 2016 WL 4494450, at *1 (Mich. Ct. App. Aug. 25, 2016)

(footnote omitted).

Following sentencing, Petitioner's appellate counsel filed a motion to remand the case to the trial court for an evidentiary hearing.  The Michigan Court of Appeals remanded for an evidentiary hearing in the circuit court "limited to the

issue of whether trial counsel was ineffective for failing to present an alibi defense." (ECF No. 10-17, Page ID.200).

At the hearing, the trial court heard testimony from Petitioner's trial counsel, Petitioner's brother, mother, girlfriend, and himself. (ECF No. 10-14; ECF No. 10-15). The trial court denied relief, finding that Petitioner's counsel reasonably investigated the alibi defense and reasonably decided not to assert the defense at trial. The court noted that Petitioner's brother "admitted he could not remember the date of the robbery. He could not remember the day of the week. And that it was common for him to hang out with his brother." (ECF No. 10-16, Page ID 9-10). The court noted that Petitioner's brother no longer possessed the text messages that Petitioner claimed would corroborate his alibi. *Id*. The court found that counsel reasonably focused his efforts on challenging the identification testimony by the victims rather than present a weak alibi defense. *Id*. 11-14.

Following the hearing, Petitioner's appellate counsel filed a brief on appeal that raised the following claims:

> I. Is Defendant-Appellant entitled to a new trial where he was denied the effective assistance of counsel at trial?
>
> II. Is Defendant-Appellant entitled to resentencing where the scoring of offense variables 3, 4, 10, and 14 were incorrect?
>
> III. Should the court costs, as part of Defendant-Appellant's sentence, be vacated, as it is not authorized by a specific legislative act?

4

Petitioner also filed a supplemental *pro se* brief that raised an additional

eight claims:

> I. Ricky Alonzo Lewis was denied his due process rights
> to a fair trial where his jury considered tainted
> identification testimony that derived from an
> unconstitutional, unduly suggestive corporeal lineup
> procedure.

> II. Ricky Alonzo Lewis was denied his due process rights
> to a fair trial where his jury considered tainted testimony
> from an unconstitutional suggestive in court
> identification procedure.

> III. Ricky Alonzo Lewis was denied his sixth amendment
> right to the effective assistance of counsel where counsel
> failed to move to suppress the suggestive corporeal
> procedure in which his client was the only participant
> wearing the clothing article described by victim Lori
> Watson.

> IV. Ricky Alonzo Lewis was denied his sixth amendment
> right to the effective assistance of counsel where counsel
> failed to object to his client being identified in prison
> garb.

> V. Ricky Alonzo Lewis was denied his sixth amendment
> right to the effective assistance of counsel where counsel
> failed to move to suppress the suggestive in-court
> identification in which his client Ricky Lewis was
> identified in prison garb by victim Jack Gibson.

> VI. Ricky Alonzo Lewis was deprived of the effective
> assistance of counsel where counsel failed to present
> Ricky Alonzo Lewis' alibi defense.

> VII. Ricky Alonzo Lewis trial was rendered
> fundamentally unfair when the trial court allowed the

prosecutor to admit into evidence Ricky Alonzo Lewis'
use of an alias.

VIII. Ricky Alonzo Lewis was denied sixth amendment
right to the effective assistance of appellate counsel
where counsel failed to raise several meritorious
constitutional claims, neglected to support his ineffective
assistance of counsel claim with a motion to remand as
mandated by MCR 7.211(c) and People v. Ginther, and
raised issue III supported by overruled case law.

The Michigan Court of Appeals affirmed in an unpublished opinion. *Lewis*,

2016 WL 4494450, at *1.  Petitioner subsequently filed an application for leave to

appeal in the Michigan Supreme Court, raising the same claims that he raised in

the Michigan Court of Appeals.  The Michigan Supreme Court denied the

application by standard form order. *People v. Lewis*, 894 N.W.2d 594 (Mich.

2017) (Table).

## II.    STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d)(1) curtails a federal court's review of

constitutional claims raised by a state prisoner in a habeas action if the claims were

adjudicated on the merits by the state courts.  Relief is barred under this section

unless the state court adjudication was "contrary to" or resulted in an

"unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

6

decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*per curiam*) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); *see also Woods v. Etherton*, 2016 WL 1278478, at *3 (U.S. Apr. 4, 2016) (habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude.")

## III.  DISCUSSION

### A.  Alibi Defense

Petitioner's first claim asserts that his trial attorney rendered ineffective assistance of counsel by failing to present an alibi defense at trial.  Petitioner states that he was with his brother on the night of the incident, and that he was in telephone communication with his girlfriend that evening as well.  Trial counsel

interviewed these witnesses prior to trial, but he did not present their testimony in Petitioner's defense.  The trial court denied relief on the merits after holding an evidentiary hearing, and the Michigan Court of Appeals affirmed that decision.

After reciting the controlling Supreme Court standard, the state appellate court found in pertinent part:

> Defendant first argues that the trial court erred by not finding that his trial counsel was ineffective for failing to present an alibi defense through the testimony of defendant's brother, girlfriend, and mother, and through cellular telephone records.  Defendant argues that the alibi testimony and the cell phone records would have placed him at a location seven miles from the crime scene at the time of the offense.  He further argues that the trial court's finding is clearly erroneous because counsel was unable to articulate any particular reason for not calling the alibi witnesses.
>
> ***
>
> At the *Ginther* hearing, defendant's brother, Juandrell Lewis, testified that he and defendant played basketball at the Diggs housing complex on the evening of the robbery.  When they were finished playing, they went to Juandrell's house, stopping to pick up a pizza along the way.  Juandrell testified that he lived on Christy Street on Detroit's eastside, approximately seven miles from the downtown location where the carjacking occurred.  He said that, apart from defendant's quick (7 to 10 minutes) errand to a neighborhood store for cigarettes, he and defendant were together playing a video game from 11:30 p.m. until Juandrell went to bed at around 1:00 a.m. or 2:00 a.m.  Defendant's girlfriend and mother testified that they were not with defendant at the time the robbery occurred, but both said they exchanged text messages with him.

Defense counsel testified at the *Ginther* hearing that he did not know why he did not present an alibi defense, but said that he routinely presents favorable evidence if it exists.  He denied there were any specific circumstances pertaining to defendant's case that created an exception to his usual practice.

Based on the evidence presented at the *Ginther* hearing, the trial court inferred that trial counsel had a strategic reason for not presenting the alibi witnesses and alibi defense, notwithstanding that counsel could not or would not articulate that reason.  The trial court also found that counsel based his decision on sound reasons; namely, that the alibi testimony was not as strong as defendant believed and that the presentation of a weak alibi defense would undermine the misidentification defense.

Defendant argues that the trial court's finding regarding ineffective assistance is clearly erroneous because counsel was unable to articulate any particular reason for not calling the alibi witnesses.  From our review of the record, we conclude that the trial court did not clearly err in "affirmatively entertaining the range of possible reasons" supported by the available evidence that counsel may have had for proceeding as he did, and in concluding that defense counsel's conduct fell within the range of reasonable professional conduct "in light of all the circumstances."  *See Gioglio*, 296 Mich. App. at 22-23 (quotation marks and citation omitted).  Juandrell admitted that he did not recall the date or the day of the week that the robbery occurred.  He explained that he previously determined from his cell phone messages that the robbery occurred the night he and his brother had played basketball at the Diggs complex.  However, he no longer owned that cell phone, so he could not corroborate his explanation.  Similarly, an affidavit Juandrell submitted on defendant's behalf did not specify the date on which he was with defendant, only that they were together "on the night in question."  However,

9

Juandrell's admission that he frequently socialized with defendant weakens his assertion that he remembered clearly the events of "the night in question," especially considering that the "night in question" was two months before Watson identified defendant as a participant in the carjacking and was otherwise unremarkable.  Further, defendant's girlfriend and mother admitted that they were not with defendant at the time of the robbery and carjacking.  The totality of these circumstances supports the trial court's finding that, because the vague testimony of defendant's family members and girlfriend would constitute a factually anemic defense that might distract the jury from the stronger defense of misidentification, trial counsel was not deficient in failing to pursue an alibi defense.

Defendant also contends that his cell phone records would have provided an alibi.  Trial counsel denied remembering anything relevant to his decision not to use the cell phone records in his defense.  Nevertheless, the prosecutor testified at the *Ginther* hearing that he had examined the cell phone records and found no correlation between defendant and the phone.  Defendant presented no evidence that the cell phone records were consistent with his known activities, and the cell phone was no longer available for examination.  These facts support the trial court's finding that counsel's failure to use the cell phone records was also a reasonable strategic decision.

In sum, we conclude that the trial court did not clearly err in determining that counsel's decision against presenting an alibi defense and using defendant's cell phone records were matters of trial strategy.  Accordingly, we conclude that defendant has failed to overcome the presumption that counsel's strategy was sound. *Davis*, 250 Mich. App. at 368.

*Lewis*, 2016 WL 4494450, at *1-4 (footnote omitted).

10

Under clearly established Supreme Court law, a defendant must prove two things to demonstrate ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  When evaluating counsel's performance under *Strickland*'s first step, the reviewing court must apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  Stated differently, the defendant is required to overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Id*. at 689. Courts must "not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors."  *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (internal quotation marks and citation omitted).

"[D]oubly deferential judicial review" applies to a *Strickland* claim evaluated under § 2254(d)(1)'s standard.  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher

11

threshold.'"  *Id*. (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The

pivotal question is whether the state court's application of the *Strickland* standard

was unreasonable.  This is different from asking whether defense counsel's

performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86,

101 (2011).  Further, "because the *Strickland* standard is a general standard, a state

court has even more latitude to reasonably determine that a defendant has not

satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*,

541 U.S. 652, 664 (2004)).

The failure to call a known alibi witness *can* constitute ineffective assistance

of counsel.  *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).  But given the

doubly deferential standard that applies here, Petitioner has failed to demonstrate

entitlement to relief.

Defense counsel testified at the state court hearing that he reviewed the cell

phone records provided by the prosecutor, he spoke in person with Petitioner's

brother and mother several times, and he spoke with Petitioner's girlfriend by

phone.  He was unwilling to say whether his decision not to present an alibi

defense at trial, however, was a strategic decision, and he instead repeatedly

claimed that he could not remember why he chose to forego the defense. ECF No.

10-14, PageID.15-20.  Contrary to Petitioner's argument, however, counsel did not

testify that he had no strategic reason for failing to raise the defense; he testified

that he could not remember the reason:

> Q: So you don't recall why you didn't call these
> witnesses, but perhaps there was a strategic reason?
>
> A: I don't recall.
>
> ***
>
> Q: Do you remember discussing it with your client?
>
> A: Yes.
>
> Q: And what did your client tell you?
>
> A: He said that there were alibi witnesses.
>
> Q: And then did you discuss with him the pros and cons
> of presenting an alibi that's possibly flawed?
>
> A: I don't recall.
>
> Q: But you do remember -- you appear to remember
> some parts of your discussions with your client and not
> recall others?
>
> A: I recall him telling me that there were alibi witnesses.
>
> Q: Okay. So then did you discuss with your client
> presenting those witnesses?
>
> A: Yes.
>
> Q: And so when did you decide you were not going to
> call those witnesses?
>
> A: At some point during the trial.

>THE COURT: Why did you do that; why did you make
>that decision? That's what I'm -- I need to know, why did
>you decide that?
>
>THE WITNESS: I don't recall, Judge.

(ECF No. 10-14, PageID.17-20).

To be sure, it would be helpful to know counsel's reasoning for failing to call the defense witnesses. But under the clearly established standard, counsel's actions are presumed to rest on sound strategic reasoning. *Strickland*, 466 U.S. at 689. And as the state appellate court reasonably found, Petitioner did not appear to have a strong alibi defense to present. His brother admitted on cross-examination that he regularly spent time with Petitioner. (ECF No. 10-15, PageID.35). About three months had elapsed between the date of the crime and Petitioner's arrest. Petitioner's brother explained that he nevertheless knew he was with Petitioner on that particular date and time because he matched his memories with the dates and times on text messages and phone calls on his cell phone. *Id*. 36-38. However, he failed to share this corroborating information with anyone else prior to trial. *Id.* 38. The information was lost at the time of the hearing because he had a new cell phone. *Id*. Additionally, Petitioner's girlfriend did not present particularly strong alibi testimony at the hearing either. (ECF No. 10-15, PageID.15-19). She candidly admitted that despite receiving text messages on the night in question

from Petitioner, she did not really know where he was because she was not with

him.  *Id*. 21.

Finally, the trial prosecutor testified at the hearing that he informed defense

counsel during trial that he was looking forward to cross-examining the alibi

witnesses because he did not believe them.  (ECF No. 10-15, PageID.4-7).  He

reviewed the cell phone records before trial and believed that there was no

evidence connecting the number to Petitioner.  *Id*.

In light of this scant record, trial counsel's decision not to present an alibi

defense reflected sound strategic judgment.  Federal habeas courts do not second-

guess judgments of this sort.  It is apparent that rather than risk a cross-

examination of unsure defense witnesses who might have undermined the

defense's credibility as a whole, defense counsel chose to rely on discrediting the

prosecution's witness by challenging the strength of the identification testimony.

This was reasonable strategy.  *See*, *e.g.*, *Hale v. Davis*, 512 Fed. Appx. 516, 521-22

(6th Cir. 2013).  Indeed, "to support a defense argument that the prosecution has

not proved its case it sometimes is better to try to cast pervasive suspicion of doubt

than to strive to prove a certainty that exonerates.  All that happened here is that

counsel pursued a course that conformed to the first option . . . In light of the

record here there was no basis to rule that the state court's determination was

unreasonable."  *Id*.

In other words, Petitioner had not demonstrated entitlement to habeas relief

because a "fair-minded jurist could conclude that counsel . . . made sufficient

investigation of the alibi defense to support a reasonable strategic decision not to

pursue the alibi defense." *Hawkins v. Woods*, 651 Fed. Appx. 305, 311 (6th Cir.

2016).  In light of the relative weakness of the alibi evidence presented at the state

court hearing, the decision of the state courts rejecting the claim was not

objectively unreasonable.

   B.    Identification Procedures

   Petitioner's remaining claims concern his identification as the perpetrator by

the two victims.  He asserts that Watson was subjected to an unduly suggestive

pretrial line-up procedure because Petitioner was the only man in the line-up

wearing a hooded sweatshirt.  He argues that Gibson was erroneously allowed to

identify him for the first time during the preliminary examination.  He asserts in his

final two claims that his attorneys were ineffective for the way they handled the

victim identification issues.

   With respect to the challenges to the victims' identification of Petitioner,

after reciting the controlling Supreme Court standard, the Michigan Court of

Appeals rejected the claims as follows:

>    The photograph depicting the lineup at issue shows
> five African-American men of similar height, build, hair
> length, hairstyle, complexion, and age, all casually
> dressed in unremarkable street attire.  Defendant is

16

wearing the clothes he had on when police arrested him and is the only participant wearing a hoodie. Defendant contends that the hoodie made the lineup unfairly suggestive because Watson's assailant was also described as having worn a hoodie. However, a hoodie is not an uncommon or unique article of clothing, and the description of the hoodie worn by the assailant differed from the hoodie worn by defendant in the lineup. According to Watson, her assailant was wearing a dark grey sweatshirt, whereas in the lineup, defendant was wearing a light or cream-colored sweatshirt. Defendant's mere appearance in the lineup wearing a common article of clothing of the same type worn by Watson's assailant was not "so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Williams*, 244 Mich. App. at 542. Because the lineup procedure was not unduly suggestive, there was no plain error. *Borgne*, 483 Mich. at 196-197. Because there was no plain error, a motion challenging the lineup as unfairly suggestive likely would have been futile. Consequently, defendant's claim that defense counsel provided ineffective assistance by not challenging the lineup or the admission at trial of identification testimony arising from the lineup must fail. *People v. Ericksen*, 288 Mich. App. 192, 201 (2010) (noting that counsel is not ineffective for failing to "advance a meritless argument or raise a futile objection").

Defendant also contends that Gibson's identification at the preliminary examination should have been suppressed because defendant was wearing prison garb when he appeared at the examination. In *Colon*, we agreed with the defendant "that the preliminary examination was a suggestive atmosphere in that defendant was placed in the courtroom in prison garb." *Colon*, 233 Mich. App. at 305. However, we determined that the prosecution "showed, by clear and convincing evidence, that the victim's identification of defendant had a sufficiently independent basis and was not based on any

17

suggestiveness surrounding the preliminary examination." *Id*. The victim was able to observe the perpetrator for at least five minutes in a room where the lights were on, the victim's description of the perpetrator was an accurate description of the defendant, and less than two weeks had passed between the time of the assault and the preliminary examination. *Id*. Thus, we concluded that, "[u]nder the totality of the circumstances, defendant has failed to show that there was a substantial likelihood of misidentification." *Id*.

In this case, when Gibson saw defendant in the courtroom at the preliminary examination, defendant was wearing prison garb, but he was not seated at the defense table. Gibson testified that he observed the perpetrator's face closely during the incident, and that he recognized defendant from his face, not from his prison garb. Given the totality of the circumstances, it is neither clear nor obvious that Gibson lacked an independent basis for identifying defendant. Accordingly, defendant has failed to establish a plain error affecting his substantial rights. *Borgne*, 483 Mich. at 196-197. Absent a showing of plain error, defendant's related claim that trial counsel was ineffective for failing to challenge Gibson's identification at the preliminary examination or object to Gibson's identification testimony at trial must also fail because defendant cannot establish a reasonable probability that any such motion or objection would have affected the outcome of the proceedings. *Carbin*, 463 Mich. at 600.

*Lewis*, 2016 WL 4494450, at *7-8 (footnote omitted).

This decision was reasonable. The Due Process Clause requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Brathwaite*, 432 U.S.

18

98, 114 (1977)).  A pretrial identification procedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification.  *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson*, 432 U.S. at 99 (holding that due process challenges to identification procedures are reviewed using the *Biggers* test).  The evil to be avoided is that an initial improper identification procedure will result in misidentification at trial and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967).

A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive.  It is only after a defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure.  *Id*. at 240 n.31.  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification.  *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

A poor photocopy of the lineup was included with the Michigan Court of Appeals record.  (ECF No. 10-17, PageID.1102).  As explained by the Michigan

Court of Appeals, the photo depicts five individuals who appear to be of roughly the same age, height, weight, complexion, and build.  While it appears Petitioner is the only individual wearing a hooded sweatshirt, all five men appear to be wearing similarly "unremarkable street attire."  The fact that petitioner is wearing a hoodie in the photo does not particularly stand out, and as the Court of Appeals noted, the hoodie worn during the lineup was a markedly different color from the one described by the victims, the former described as a light color and the latter a dark one.  *Coleman v. Alabama*, 399 U.S. 1 (1970) is instructive.  There, the petitioner contended that the identification procedure was unduly suggestive because he wore a hat while none of the other line-up participants had on a hat.  This was important because the assailant had been described by the witness making the identification as wearing a hat.  The Court observed that while the petitioner did wear a hat, there was no requirement that he do so.  And the Court further concluded that the witness who identified him did not rely on the hat, given that he asked for petitioner to remove the hat before making the identification.  *Id*. at 8.  Similarly here, Petitioner happened to wear a hoodie during the lineup and he points to nothing in the record suggesting he was required to do so.  Further, Petitioner does not point to any evidence in the record indicating that the witness relied on the fact he was wearing a hoodie when making the identification.  Under these circumstances, Petitioner does not establish that the lineup, as depicted in the

20

photocopy and described by the Michigan Court of Appeals, was unduly

suggestive, and therefore the decision of the Court of Appeals was reasonable.

With respect to the in-court identification made during Petitioner's

preliminary examination, the fact that Petitioner was the defendant at the hearing

and was wearing jail garb did create suggestive circumstances. Indeed, the

Supreme Court has acknowledged that such identifications are suggestive. *See*

*Perry v. New Hampshire*, 565 U.S. 228, 244 (2012) ("Most eyewitness

identifications involve some element of suggestion. Indeed, all in-court

identifications do."). However, no Supreme Court case has specifically found that

a witness's in-court identification of a defendant in prison garb, made outside the

presence of a jury, constitutes a due process violation. [1] Instead, the inquiry here is

governed by *Perry*. 565 U.S. at 241 n.6 (2012). And under *Perry*, "[t]he fallibility

of eyewitness evidence does not, without the taint of improper state conduct,

warrant a due process rule requiring a trial court to screen such evidence for

reliability before allowing the jury to assess its creditworthiness." An

identification procedure violates due process of law only if the confrontation was

---

[1] Notably, the line of cases traceable to *Estelle v. Williams*, 425 U.S. 501 (1976) do not apply here because no jury is present during a preliminary examination. In *Estelle*, the Supreme Court held that the government cannot compel an accused to stand trial before a jury while dressed in "identifiable prison clothes," but the failure to object is sufficient to negate the presence of compulsion, which is necessary to establish a constitutional violation. *See also U.S. v. Brown*, 367 F.3d 549 (6th Cir. 2004) (In the absence of compulsion to wear prison garb, there was no due process violation when defendant's jury trial was conducted while in prison garb).

"'unnecessarily suggestive and conducive to irreparable mistaken identification.'"

*Neil v. Biggers,* 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293,

302 (1967)).

> If there is "a very substantial likelihood of irreparable
> misidentification," *Simmons v. United States*, 390 U.S.
> 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the
> judge must disallow presentation of the evidence at trial.
> But if the indicia of reliability are strong enough to
> outweigh the corrupting effect of the police-arranged
> suggestive circumstances, the identification evidence
> ordinarily will be admitted, and the jury will ultimately
> determine its worth.

*Perry*, 565 U.S. at 232.

Because Petitioner's case involved an in-court identification procedure,

improper law enforcement activity is not implicated.  And under *Perry*, "the Due

Process Clause does not require a preliminary judicial inquiry into the reliability of

an eyewitness identification when the identification was not procured under

unnecessarily suggestive circumstances arranged *by law enforcement*."  *Perry*, 565

U.S. at 248. (Emphasis supplied).   The *Perry* Court stated "[w]hen no improper

law enforcement activity is involved, we hold, it suffices to test reliability through

the rights and opportunities generally designed for that purpose, notably, the

presence of counsel at post-indictment lineups, vigorous cross-examination,

protective rules of evidence, and jury instructions on both the fallibility of

eyewitness identification and the requirement that guilt be proved beyond a

reasonable doubt." *Id.* at 233.   Here, the reliability tests outlined in *Perry* were

followed -- Petitioner was afforded counsel at the preliminary examination, he

availed himself of the opportunity to cross-examine the identifying witnesses, and

he had the other constitutional protections outlined in *Perry*.  As the Michigan

Court of Appeals explained,

> Gibson testified that he observed the perpetrator's face
> closely during the incident, and that he recognized
> defendant from his face, not from his prison garb. Given
> the totality of the circumstances, it is neither clear nor
> obvious that Gibson lacked an independent basis for
> identifying defendant.

*Lewis*, 2016 WL 4494450, at *7-8.  Under such circumstances, the bare fact that

the identification procedure was suggestive because it occurred in a courtroom

where Petitioner was the only person wearing jail garb, did not raise a

constitutional violation.  Accordingly, Petitioner has not shown that the state court

of appeals' rejection of the due process claim was an unreasonable application of

clearly established Supreme Court law, given that *Perry's* mandates were

followed.

Petitioner's related ineffective assistance of counsel claims fall with his

suggestive identification claims.  A defense lawyer cannot be faulted for failing to

challenge an identification procedure that was not  improper.  *See Perkins v.*

*McKee*, 411 Fed. Appx. 822, 833 (6th Cir. 2011).  Furthermore, with respect to the

circumstances of Gibson's identification at the preliminary examination, the Court

23

notes that defense counsel did not ignore the issue.  On cross-examination of

Gibson, defense counsel vigorously questioned the witness.  Counsel elicited the

fact that Petitioner was wearing jail garb.  (ECF No. 10-10, PageID.560).  Counsel

likewise questioned the accuracy of Gibson's description of the perpetrator to

police.  *Id*. at PageID.561-567.  Counsel used these circumstances to argue that

Gibson's identification of Petitioner was not credible.  Counsel's decision to attack

the identification in this manner as opposed to moving for suppression—a motion

the state appellate court concluded would have been denied—was not ineffective.

*See Killebrew v. Endicott*, 992 F.2d 660, 665 (7th Cir. 1993) ("Counsel could

reasonably have concluded that attempting to destroy the credibility of the

government's lead witness was the best trial tactic.  We cannot accept that such a

trial tactic falls below objective standards of reasonableness.").

As none of Petitioner's claims merit relief, the petition will be denied.

## IV.   CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal, a certificate of appealability must issue.  *See*

28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability

may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the

merits, the substantial showing threshold is met if the petitioner demonstrates that

reasonable jurists would find the court's assessment of the claim debatable or

wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Having undertaken the requisite review, the court concludes that jurists of reason might debate the Court's decision with respect to Petitioner's claim that his counsel was ineffective for failing to raise an alibi defense. *See*, *e.g.*, *Towns v. Smith*, 395 F.3d 251, 259-60 (6th Cir. 2005); *Stewart v. Wolfenbarger*, 468 F.3d 338, 356-61 (6th Cir. 2006); *Avery v. Prelesnik*, 548 F.3d 434, 437-39 (6th Cir. 2008).

The Court will grant permission to appeal in forma pauperis because an appeal of this decision can be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.   CONCLUSION

Accordingly, the Court 1) **DENIES** the petition for a writ of habeas corpus, 3) **GRANTS** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**IT IS SO ORDERED**.

Dated: September 28, 2021            s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States District Judge